Judge Carr:
The defendant Ashley was a deputy sheriff of Fauquier county, from February, 1814, to February, 1818. During this time, many executions came to his hands against the defendant John Kemper. These executions he held up, neither levying nor returning them.. The creditors seem to have had a good deal of forbearance; but at length they began to make motions against the sheriff, for failing to return the executions. As the law was then understood and practised on, motion after motion might be made, until the execution was returned. The defendant Ashley found himself in this dilemma;—he must either submit to motions without end, for fines, or he must make such return, as would subject him to the whole debt, and the 15 per cent. *9 damages. He advised with Mr. Scott, a gentleman standing high ill the profession of the law, and interested as plaintiff's counsel, in several of the heaviest executions. His advice was, that he should obtain an indemnity from Kemper, and return the executions “ready to satisfy.” This plan was carried into execution. On the 19th of January, 1818, Kemper executed a deed of trust ou various property, to Withers, as trustee; the purpose of which was, to indemnify Ashby against all the consequences of his past failures; and also, of any failures which he might be guilty of, in executions which should thereafter come to his hands. This deed of trust was not recorded in time; but there is full proof that the plaintiff knew of it, when he took a deed of trust of a subsequent, date, on the same property. The defendant Kemper, not having complied with his undertaking to pay off’ the executions, and keep Jlshby harmless, his trustee advertised a sale under the deed of trust; and the plaintiff, claiming under his subsequent deed, filed this hill of injunction to stay the sale, and have the deed to Jlshby set aside; on the ground that the consideration was illegal, being to induce the officer to make false returns on those executions which had come to his hands, and to violate his duty in those which might thereafter come to him.
The Chancellor decided, that so far as the defendant Jlshby, at the date of the deed, was liable for executions placed in his hands, the consideration of the deed was valid as an indemnity, to the extent of the principal, interest and costs, which ought to have been made on the executions; but invalid for every other purpose; but that though the deed was an invalid security for any fines, forfeitures or damages, incurred or paid by the sheriff for failure to do his duty, yet if any of these fines, forfeitures or damages, had been discharged, or payments made towards them, by the defendant Kemper, or by his directions, these payments should not be called back, or differently applied, in settling the account. Under this decision, the account was taken, *10 and the injunction partly dissolved; from which decree, ^le aPPe£d ^ taken.
The first question arises on the validity of the deed from John Kemper to Ashby. It was acknowledged by the appellee’s counsel, in the argument, that the consideration of this deed was invalid, so far as it purported to indemnify the sheriff from the fines, forfeitures and damages, arising from his failing to return the executions; and so far also, as it provided indemnity for any of the consequences of a prospective failure in his duty; but it was contended, that the consideration, so far as it was to indemnify for the returning the executions “ready to satisfy,” which had before come to his hands, was good as to principal, interest and costs; and that the Court might separate the good from the bad. On the other side, it was insisted, that the whole consideration was illegal, and the deed void.
' If the whole consideration was illegal, it must be because it violated some statute, or was in its nature immoral and vicious. I know of no statute which this deed violates; certainly it does not come within the letter or the spirit of our statute, (1 R. C. 281, § 20,) speaking as to obligations taken by sheriffs of persons in their custody. This indeed was admitted in the argument. With respect to that part of the consideration which the Chancellor declared good, what moral principle or feeling does it outrage ? It certainly could not bo the motive which led the sheriff to neglect his duty, and forbear to levy the executions; for they were out of date before the contract was made. He had already incurred the liability. The consideration for the indemnity was past. His neglect, then, and violation of his duty, could not be induced by that indemnity; and when Kemper reflected that here was a man, who had been severely fined, and had incurred much heavier responsibilities, because he had forborne, at his request, to take his property from him by executions; it surely was no immoral or corrupt feeling, which prompted him to execute the deed for his indemnity.
*11 But it was said, that the return on the executions, “ready to satisfy,” was not made till after the deed of trust was executed; that they were thus returned, in consequenco of that arrangement; that the return was false; and this false return was a part of the consideration, for which the deed was made. But were these returns false, in the legal sense? When a sheriff returns “ready to satisfy,” does he necessarily say, “ I have levied this execution on the goods and chattels of the defendant; have sold those goods, and raised the money ?” Does he not rather mean to say, “ I have so proceeded on this execution, (no matter how) that I am ready to pay the money ?” Suppose the sheriff, before he got the execution, had borrowed money of the debtor; suppose he had bought property of him to the amount; suppose the debtor had undertaken to pay money for the sheriff; suppose any other contract between them, by which the sheriff was induced to take upon himself the responsibility of the return. jMighthe not, in all these cases, make it? Could he be proceeded against, and punished for it as a false return? These questions are answered by the decision of this Court, in Norris v. Crummey, &c. 2 Rand. 323, where they say, that under such circumstances, the return of “ ready to satisfy,” would be a valid, true and proper return. This objection, therefore, is of no weight. The sheriff had so acted with the executions, that he could make no true return, which would not render him liable. If he made no return, they would go on fining him in infinitum. He advised with counsel, and “ready to satisfy,” was thought the best return he could make. The deed of trust, then, so far as the actual liability of the sheriff is provided for, violates no principle of honesty, morality, or common law.
But it is confessed, that the provision for the future failures of the sheriff is void; the consideration being a violation in prospect of his duties. Does this vicious consideration avoid the whole deed, or may we separate the bad from the good, and) sustain the deed for the latter ? *12 We do not encounter the question here, whether there is any difference, and what, between an instrument affected by a statute, and one depending on the principles of the common law; f°r this deed touches no statute that I know of; the question is wholly upon the principles of the common law; and the eases are very numerous to shew, that wherever the transaction is of such a nature, that the good consideration can be separated from the bad, the Court will do it. Robinson v. Bland, 2 Burr. 1077; Same Case, 2 Black. Rep. 234; Petrie v. Hannay, 3 Term. Rep. 418; ---v. King, 11 East. 165; Wigg v. Shuttleworth, 13 East. 87; How v. Synge, 15 East. 440; Bradshaw v. Balders, 4 Taunt. 57; Fuller v. Abbott, 4 Taunt. 105; Collins v. Blantern, 2 Wils. 301; Pigot's Case, 11 Rep. (b;) Norton v. Simmes, Hob. 14; Greenwood v. Bishop of London, 5 Taunt. 727; Newman v. Newman, 4 Maule & Selwyn, 66. Thus far, therefore, I concur entirely with the Chancellor.
Another objection to the decree is, that two exceptions taken to the report, were sustained by the Chancellor. These exceptions arose on the question of payments. The Chancellor had decided, that though the deed furnished no security to indemnify the sheriff for any fines; yet if the defendant Kemper had, in any case, made actual payments in discharge of any fine, such payments should stand:—a principle supported by many cases. See Collins v. Blantern, ubi. sup. Ashby excepts to the report of the commissioner: 1st, because he refused to admit as payments of the fines, &c. $7 87, and $ 220 74; the first being a judgment for costs, imposing a fine on Ashby; the second, the amount of fines imposed on Ashby for not returning executions in the case of Scott, assignee v. Kemper, of April 3d, 1817. This exception is sustained by the Chancellor, I think, correctly, upon the principle he had laid down; because these were fines and costs imposed on Ashby in 1817, in the cases of Scott, assignee v. Kemper, &c.; and in his bill, filed against Jennings, the defendant Kem *13 per says, that he had paid all those fines himself. Now if ho made the payments, specially to those purposes, as we must conclude from his own oath, they could not after-wards be called back, and credited against the principal sums of the executions.
The second exception is on account of $ 448. This was also properly sustained, 1 think, because it was originally paid towards the fines in the same cases of Scott, assignee v. Kemper; and when the arbitrators decided that so much should bo deducted from those particular fines, it should have been applied to the 15 per cent, awarded against the sheriff. This was its original destination by the defendant Kemper, (and not as a payment to any part of the principal of the debí;) and the arbitrators so understood it, as may be seen by their award, and the depositions of Scott and Jennings.
I think, therefore, that the decree is right, and should be affirmed.
The other Judges concurred, and the decree was affirmed*

 Judges Cabell and Ghees’, were absent. Judge Gbees, decided the canse in Üie Court below.